## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 15-10347-PBS |
| | ) | |
| VINCENT C. ANZALONE, | ) | |
| | ) | |
| Defendant. | ) | |

### GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO COMPEL

Now comes the United States of America, by and through attorneys, Carmen M. Ortiz, United States Attorney for the District of Massachusetts, and David G. Tobin, Assistant United States Attorney, and submits its response in opposition to the Defendant's Motion to Compel Discovery [Docket No. 53]. For the reasons set forth below, Defendant's motion should be denied.

### INTRODUCTION

Defendant is charged in this case with receipt and possession of child pornography. The charges arise from an investigation into "Playpen," a website through which registered users like Defendant regularly accessed illegal child pornography. That website operated on the Tor network. This network allows its users to mask their Internet Protocol ("IP") addresses, which—absent such concealment—ordinarily can be used to identifying website users. The Tor network operates to conceal this information by bouncing user communications around a network of computers before transmitting such communications to their ultimate destination. Defendant's IP address was discovered through the court-authorized use of Network Investigative Technique ("NIT"). Pursuant to a search warrant authorized in the Eastern District of Virginia, Playpen's content—which was hosted on a computer server located within the eastern District of

Virginia—was augmented with additional computer instructions comprising the NIT while the website briefly operated under government control.[1]

Defendant seeks disclosure of what he generally describes as the "complete programming code for the 'Network Investigative Technique' (NIT)" used to identify his computer.  Def.'s Mot. to Compel Disc. at 1. His request to compel disclosure of this information represents nothing more than a fishing expedition for information that either is not material to his defense or has already been provided.  Even if the Court were to find that disclosure of the NIT programming code was material to Defendant's defense, that information is protected by a qualified law enforcement privilege.  Accordingly, this Court should deny Defendant's motion.

## INTRODUCTION

The government does not intend to use in its case-in-chief at trial the "programing code for the… NIT." The requested information in not material to Defendant's defense and the reasons Defendant claims he needs the information are insufficient to warrant this Court to order the government to provide it to the defense.  Moreover, the programing code for the NIT is subject to law enforcement privilege, which the government asserts.  The government notes that the information collected through the use of the court-authorized NIT is available for counsel's review and will remain available for further review during the pendency of the litigation. Additionally, only a limited set of information was collected through court-authorized use of the NIT; specifically, the information described in Attachment B of the warrant authorizing the deployment of the NIT.  Other information about user activity, such as the pages and postings

---

[1]   Further detail about the website, investigation, and NIT is contained in the government's Response to the Defendant's Motion to Suppress and exhibits thereto.  Such information is incorporated here by reference.

accessed, was collected through request data and website logs that were not a function of the NIT.

## LAW AND ARGUMENT

**I.   The Defendant has Failed to Show that the NIT Programming Code is Material to his Defense**

Under Federal Rule of Criminal Procedure 16, a criminal defendant has a right to inspect documents, data, or tangible items within the government's "possession, custody, or control," that are "material to preparing the defense."  Fed. R. Crim. P. 16(a)(1)(E).  "[I]n the context of Rule 16, 'the defendant's defense' means the defendant's response to the government's case in chief."  *United States v. Armstrong*, 517 U.S. 456, 462 (1996).

Similarly, *Brady v. Maryland*, 373 U.S. 83 (1963) requires that under the Due Process Clause, the government shall disclose "evidence favorable to an accused upon request…where the evidence is material either to guilt or to punishment.  In the First Circuit, evidence is "material" if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  *United States. v. Blais*, 98 F.3d 647, 651 (1st Cir. 1996) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).  Materiality arises neither from mere speculation about the exculpatory nature of undisclosed evidence, see *United States. v. Caro-Muniz*, 406 F.3d 22, 28 (1st Cir. 2005); *United States. v. Brandon*, 17 F.3d 409, 456 (1st Cir. 1994), nor from evidence which would just as easily be corroborated by previously disclosed information.  See *Gilday v. Callahan*, 59 F.3d 257 (1st Cir. 1995).   The court's evaluation of materiality considers whether the defendant would receive a fair trial without that evidence, "not whether the defendant would more likely than not have received a different verdict with the evidence." *Drumgold v. Callahan*, 707 F.3d 28, 39 (1st Cir. 2013).

A defendant seeking to establish materiality must demonstrate that the requested information "would produce evidence 'likely to be pivotal to his defense,'" or that "the materials to which he or she needs access contain material and potentially exculpatory evidence."  See *United States. v. Brandon*, 17 F.3d 409, 456; see also *Caro-Muniz*, 406 F.3d at  28) (denying defendant's request for informant's tape recordings because defendant neither presented theories about "potentially exculpatory evidence on the tapes" nor "made any showing that the tapes would be of substantial assistance to his defense.").  Accordingly, a "defendant's right to discover exculpatory evidence does not include the unsupervised authority to search through the [government's] files," and a defendant cannot simply "conduct an in camera fishing expedition through the government's files." *Caro-Muniz*, 406 F.3d  at 29.   See also *U.S. v. Bagley*, 473 U.S. 667, 677 (1985) (holding no Brady violation where "a combing of the prosecutors' files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict").

Defendant seeks a copy of the NIT programming code for three stated reasons: (1) to "independently determine the full extent of the information seized by the government from the targeted computer when it deployed the NIT," (2) "whether the NIT interfered with or compromised any data or computer functions," and (3) "whether the government's representations about how the NIT works are complete and accurate."  Def.'s Mot. to Compel at 1 and 2.  He contends that the information is relevant to his Defense, yet does not explain why the discovery he seeks will help him in any way mount a defense.  He presents no factual information whatsoever in support of his speculative assertions and fails to show materiality regarding any of the specified reasons for the seeking the requested information.  Indeed, the

information sought by the instant motion is not relevant to the suppression or dismissal motions currently pending before the Court.[2] .

For all of the reasons set forth below, the defendant has also failed to show the materiality to his defense of the information he seeks.  Accordingly, Defendant's motion should be denied.

**A. Additional discovery to what the government has already provided will not shed light on the accuracy of the identifying data that connects Defendant to specific activity on the Playpen website.**

Defendant contends that, pursuant to Rule 16, he is entitled to the NIT source code because such information may reveal the accuracy of the data the government used to identify him on the Playpen Website.  Defendant bears the burden of showing that the information he seeks will raise doubt that the NIT accurately identified him as the individual accessing and downloading child pornography.  The government will provide Defendant with the computer instructions that generated the identifying data, and the identifying data, additional requests fall outside the scope of appropriate discovery outlined in *Brady*.[3]  Therefore, additional discovery requests regarding the government's chain of custody of the NIT are cumulative and

---

[2]  The motions to suppress challenge the sufficiency and legality of the search warrant (and in a very limited sense, the execution of the warrant). This latter question concerns only whether the triggering condition—logging in to Playpen—occurred.  Neither of the defendant's motions challenge the extent of the information identified by the NIT or the NIT's technical aspects, operation, or functionality—either generally or with respect to the defendant, specifically. Accordingly, the NIT source code and an independent forensic analysis of the same are neither relevant nor necessary to the Court's determination of the pending motions.

unnecessary.  The defendant has not proven that disclosure would alter the quantum of proof in

his favor and therefore has not proven that any further information is material to his defense.

The information he seeks will not raise any suspicion that the NIT did not accurately identify

him as the person accessing child pornography.  The government provided the defendant with

identifying data and everything he needs to answer his questions regarding accuracy and

identification.  Additional discovery requests do not assist him in his pursuit of these questions,

and therefore his motion to compel should be denied.

### B.  The extent of the information seized from the defendant's computer

As explained in the NIT search warrant affidavit and as the government has disclosed, the

NIT programming code consists of computer instructions that caused a user's activating

computer to deliver certain authorized information to a computer controlled by the government.

Review of the programming code is unnecessary to determine the extent of information seized

from the defendant's computer by operation of the NIT because the information collected by the

NIT is available to the defense, and that information answers this question.  It includes the

defendant's IP address, a unique identifier generated by the NIT to distinguish the data from

other computers, information about whether the NIT had already been delivered to the computer,

and the computer's operating system, "Host Name," active operating system username, and

---

[3]  In *Michaud*, the defense similarly moved to compel production of the NIT programming code
and the government opposed disclosure, as it does here.  Prior to the hearing on that motion, the
government offered—without conceding any obligation to do so—to make available for review
at an FBI facility, the instructions sent to and executed on Michaud's computer, which produced
the NIT results.  *See* Gov't Resp. to Def.'s Mot. to Compel at 4, *Michaud*, 3:15cr05351, ECF 134
(W.D. Wash. Jan. 21, 2016).  The defense agreed and information was provided to the defense
pursuant to a protective order, including a copy of the computer instructions sent to Michaud's
computer that, when executed, produced the NIT results, the NIT results themselves, the date and
time the NIT was executed on Michaud's computer, and the Playpen thread that Michaud was
accessing when the NIT was executed.  *Id.* at 1, 4.  Despite Defendant's similar failure to show
materiality, the government is willing to make the same information available to Defendant in
this case.

Media Access Control ("MAC") address.  That information is contained in the "user report" available to the defendant, should the defendant contact the government to view the information. The collection of all such information was authorized by the NIT warrant.

The defendant fails to provide any factual support regarding what other information he suggests might have been collected through the NIT, let alone other information that was collected.  Indeed, the defendant has not even asked the government whether any information was collected by the NIT beyond that described in the warrant and reflected in the user report. The answer is no.  Regardless, even if the NIT had collected further information, only that information could be subject to suppression as outside the scope of the warrant—not the information specifically authorized by that warrant.  Because, however, there is no such further information, there is nothing to suppress and no compelling need for an expert to independently determine the information obtained via the NIT.

The defendant also fails to provide any information to this Court to meet his burden of showing why or how review of the programming code, as opposed to reviewing the information collected by the NIT (or other information the government could provide) would answer any question about what information the NIT collected.  Indeed, the defendant has not asked for any information related to the use of the NIT and the information it collected, beyond that already offered by the government, which might have enabled him to assess the questions he now claims compel production of the NIT programming code.  Accordingly, he fails to show how review of the programming code would reveal "the full extent of the information the government seized – particularly in light of the fact that the information collected by the NIT has already been disclosed.  The defendant therefore fails to make any showing of materiality or to present facts that tend to show the government is in possession of information helpful to the defense.

### C. Whether the NIT interfered with or compromised any data or computer functions

Review of the programming code is also not material for the purpose of determining whether the NIT interfered with or compromised any data or computer functions.  The defendant presents no information to support this wholly speculative hypothesis.  Nor can he.  The defendant has not made any discovery requests for information concerning the operation of the NIT beyond the information already offered by the government, other than his request for the NIT programming code and the NIT results.  In the instant motion, he fails to provide any information regarding what he means by "interfer[ing] with or compromis[ing] any data or computer functions."  Def.'s Mot. to Compel Disc. at 2.  He also does not explain how, if such interfering with or compromise of data or computer functions did occur—and it did not—this fact would lead to suppression of any evidence, since the only evidence "seized" was authorized by the warrant.  Nor has the defendant made any showing of how review of the programming code would provide information to support an argument for some other sort of relief if the NIT did interfere with or compromise any data or computer functions.  Finally, he has not shown the impact of any such interference or compromise on any defense to the charges pending against him.  Indeed, he cannot do so, because, as the government has disclosed, the conduct on which the indictment is based relates to the defendant's activities on the Internet that were discovered on the defendant's computer media found at his residence (and that he confessed to during an interview with law enforcement).

Critically, the defendant has ongoing access to the forensic examination conducted of his computer and other digital devices seized.  He has also been provided with substantial information pertaining to his dates of access to the pertinent website, and the date and time at which the NIT identified his IP address accessing the site.  Despite having that information, he

presents nothing to this Court from any examination of his devices to support his rank speculation that the NIT could have interfered with or compromised any data or computer functions, let alone that it did.  Absent some indication—based in fact as opposed to speculation and conjecture—that the NIT interfered with or compromised any data or computer functions—something the government disputes occurred—the defendant fails to present any facts tending to show that the government possesses information that would actually help prove his defense.

### D. Whether the government's representations about how the NIT works in its warrant applications were complete and accurate

Review of the programming code is also not material for the purpose of determining whether representations about how the NIT works are complete and accurate.  By its nature, this is an entirely speculative request that any defendant could make, at any time, in any case, in an effort to justify any request for information from the government.  The defendant presents no facts to suggest that the government is in possession of any information helpful to the defense on that issue.  Nor does he even claim that the NIT worked other than as described, just that he needs to verify that its actual operation comported with that description.  Such rank speculation cannot support a finding of materiality.  In fact, this sort of speculative request turns the criminal discovery process on its head.  If the standard for obtaining criminal discovery were, "What if the government's representations were not correct or complete," then there would be no limitation to criminal discovery and every defendant would be entitled to fish through every scrap of information in the government's possession in order to look for something that might impeach a government representation.  That is inconsistent with the disclosure requirements established by Rule 16, *Brady*, and *Giglio*.

With respect, specifically, to the descriptions of the NIT set forth in the search warrant affidavit,[4] the defendant has not identified any facts to suggest that those descriptions, in particular, are incomplete or inaccurate, despite having received substantial information pertaining to the use and execution of the NIT warrant on his computer, specifically—including exactly where on the website he was when he received the NIT. He also has access to the forensic examination of the devices seized from his home and has not requested to conduct any independent examination of those devices. Even having all of this, the best the defendant can do is hypothesize that the NIT could have worked other than as described. He cannot even muster an explanation as to what, if any, description of the NIT he is unable to test. A defendant can always allege, absent factual support, that it is arguably possible that the government did not include complete and accurate information in a search warrant. A mere allegation simply will not supply a basis for seeking to rummage through the government's files.

The defendant makes no showing as to how the NIT programming code, as opposed to other information that has been or could be made available, would actually further his defense. Rather he merely speculates that such a review might produce information that could impeach the NIT warrant or testimony concerning the process by which he was identified. "Mere speculation that *Brady* material exists does not justify fishing expeditions in government files." *United States v. Paulino*, 1996 U.S. App. LEXIS 30032, at *4 (4th Cir. Nov. 20, 2006); *see also United States v. Brown*, 360 F.3d 828, 833 (8th Cir. 2004) ("[M]ere speculation that materials may contain exculpatory evidence is not . . . sufficient to sustain a *Brady* claim); *United States v.*

---

[4]   In describing how the NIT would operate, the NIT affidavit explained that when a user's computer accessed Playpen and downloaded its content in order to display web pages on the user's computer, that content would be augmented with additional computer instructions (which comprised the NIT) that, once downloaded to a user's computer would cause the user's computer to transmit the information specified in the warrant.

*American Radiator & Standard Sanitary Corp.*, 433 F.2d 174, 202 (3d Cir. 1970) ("[A]ppellants' mere speculation about materials in the government's files [does not require] the district court or this court under *Brady* to make the materials available for their inspection.").  Absent the required factual showing, the defendant's request amounts to nothing more than a fishing expedition, which is not sanctioned by Rule 16 or any other law.

Although the defendant sets forth three purposes for which he seeks disclosure of the NIT programming code, he fails to identify any facts that he claims establish the materiality of that information to his suppression motions or to his defense.  Nor has the defendant shown that the government's objection to disclosure is inconsistent with its conduct in other cases.

## II. None of the Defendant's Other Claims of Relevance Establish Materiality

The defendant suggests that review of the NIT programming code is necessary to "investigate the chain of custody for data collected remotely by the NIT."  Def.'s Mot. to Compel Disc. at 2. This request is again purely speculative—he presents no facts whatsoever to suggest that there are or were any issues with the so call "digital 'chain of custody'" pertaining to the NIT-derived information.  That the NIT-derived information is computer-related information does not entitle the defendant or his expert to rummage through government files—digital or otherwise—in the hope of finding an error in the chain of custody.  *Cf. United States v. Guzman-Padilla*, 573 F.3d 865, 890 (9th Cir. 2009) ("[M]ere speculation about materials in the government's files [does not require] the district court . . . under *Brady* to make the materials available for [appellants'] inspection."); *Am. Radiator & Standard Sanitary Corp.*, 433 F.2d at 202 (same).

**III. The NIT Programming Code is Subject to Qualified Law Enforcement Privilege**

If the Court finds—as it should—that the defendant has failed to meet his burden to show that the requested information is material and otherwise discoverable under Rule 16, that will resolve the defendant's motion.  In the event the Court were to determine that the NIT programming code is material to Defendant's defense, however, then the requested information pertaining to that code is nevertheless subject to a qualified law enforcement privilege, as its disclosure would be harmful to the public interest.  Specifically, disclosure could diminish the future value of important investigative techniques, allow individuals to devise measures to counteract these techniques in order to evade detection, discourage cooperation from third parties and other governmental agencies who rely on these techniques in critical situations, and possibly lead to other harmful consequences not suitable for inclusion in this response.  As explained below, courts have generally recognized that, because of the sensitivity of information that may support this type of privilege claim, it is appropriate to consider a submission from the government *ex parte* and *in camera*.  Accordingly, in the event it determines the defendant's request for programming code is material, the United States accordingly requests that the Court permit the United States to offer evidence in support of its privilege claim *ex parte* and *in camera*.[5]

The privilege has its roots in *United States v. Roviaro*, where the Supreme Court first recognized a qualified "informer's privilege" that protects the identity of government informants. 353 U.S. 53, 59 (1957).  Courts have since extended the qualified privilege in *Roviaro* to cover

---

[5]  Should the Court permit the *ex parte* and *in camera* submission, the government advises that a Classified Information Security Officer with the Litigation Security Group at the U.S. Department of Justice will have to assist in providing certain documents to the Court.  Arranging for this may cause a short delay, and the government requests the Court's indulgence in arranging such an event.

other investigative techniques, including traditional and electronic surveillance.  For example, in *United States v. Green*, the D.C. Circuit applied the privilege to bar disclosure of the location of an observation post in a drug investigation because failing to do so would "likely destroy the future value of that location for police surveillance." 670 F.2d 1148, 1155 (D.C. Cir. 1981).  In *United States v. Van Horn*, the Eleventh Circuit applied the privilege to bar disclosure of the nature and location of electronic surveillance equipment because disclosure would "educate criminals regarding how to protect themselves against police surveillance."  789 F.2d 1492, 1507 (11th Cir. 1986); *see also In re The City of New York*, 607 F.3d 923, 928-29 (2d Cir. 2010) (finding that the district court erred by failing to apply the privilege to reports made by undercover agents because they contained "detailed information about [] undercover operations," disclosure of which would "hinder [law enforcement's] ability to conduct future undercover investigations").  The purpose of the privilege is, among other things, "to prevent disclosure of law enforcement techniques and procedures."  *In re Dep't of Investigation*, 856 F.2d 481, 484 (2d Cir. 1988); *Commonwealth of Puerto Rico v. United States*, 490 F.3d 50, 64 (1st Cir. 2007).

The government bears the initial burden of showing that the law enforcement privileges applies to the materials at issue, *In re The City of New York*, 607 F.3d at 944, and the courts then apply a balancing test in determining whether disclosure is required, *Van Horn*, 789 F.2d at 1508.  To meet its initial burden, the government must show that the materials contain information that the law enforcement privilege is intended to protect, which includes "information pertaining to law enforcement techniques and procedures, information that would undermine the confidentiality of sources, information that would endanger witnesses and law enforcement personnel [or] the privacy of individuals involved in an investigation, and information that would otherwise . . . interfere[] with an investigation."  *In re The City of New*

*York*, 607 F.3d at 944 (citations and internal quotation marks omitted); *see also Commonwealth of Puerto Rico v. United States*, 490 F.3d 50, 64 (1st Cir. 2007) (extending privilege recognized for "confidential government surveillance information" to "law enforcement techniques and procedures").

Because the evidence required to establish the privilege is often sensitive, courts have recognized that it is appropriate to permit the government to make its showing through an *ex parte* and *in camera* evidentiary hearing, the record of which should be sealed for later review. *See, e.g.*, *United States v. Johns*, 948 F.2d 599 (9th Cir. 1991) (approving, over the defense objection, court's consideration of the government's request to maintain the confidentiality of an informant in an *ex parte*, *in camera* hearing); *Global Relief Found, Inc. v. O'Neill*, 315 F.3d 748 (7th Cir. 2002) ("*Ex parte* consideration is common in criminal cases where, say, the identity of information might otherwise be revealed"); *In re Department of Homeland Security*, 459 F.3d 565, 569-71 (5th Cir. 2006) (instructing the district court in a civil case to "review the documents at issue *in camera* to evaluate whether the law enforcement privilege applies"); *In re The City of New York*, 607 F.3d at 949 (determining requesting party did not have compelling need for requested information based on *in camera* review of the documents; *Rigmaiden*, 844 F. Supp. 2d at 982 (denying defendant's requests for discovery concerning investigative technique after *ex parte*, *in camera* review at which the court heard the government's reasons for nondisclosure); *cf. In re Grand Jury Proceedings #5 Empanelled Jan. 28, 2004*, 401 F.3d 247, 253 (4th Cir. 2005) (approving the use of *ex parte* and *in camera* review of allegedly privileged documents in the context of a crime-fraud exception claim).

At an *ex parte in camera* hearing, the United States can provide a more detailed presentation about both the nature of the information that the defendant is requesting and the

government's concerns regarding its disclosure.  Because of the sensitivity of the technique and

for other reasons, simply filing the material under seal with a protective order is inadequate to

address the government's concerns.  Indeed, courts have recognized that sealing documents and

materials containing such sensitive information is frequently inadequate to prevent its public

disclosure.  *See, e.g., In re The City of New York*, 607 F.3d at 937-39 (citing numerous specific

examples of instances where "sealed" materials were inadvertently or intentionally disclosed,

and concluding that "[i]n light of how often there are all-too-human lapses with material filed

'under seal'" that it could not "conclude with confidence that filing" the sensitive information

would adequately protect the information from public disclosure).

Upon a finding that the privilege applies, there is a "pretty strong presumption against

lifting the privilege." *In re The City of New York*, 607 F.3d at 945 (*quoting Dellwood Farms v.*

*Cargill*, 128 F.3d 1122, 1125 (7th Cir. 1997)).  The burden shifts to the defendant, who must

show that his need for the information overcomes the public interest in keeping it secret.  *See*

*Alvarez*, 472 F.2d at 113 (finding, regarding disclosure of informer identity, that "in balancing

the interest of the government against that of the accused, the burden of proof is on the defendant

to show the need for disclosure).  The public interest in keeping the information private must be

balanced against a defendant's articulated need for the information.  *See Roviaro*, 353 U.S. at

628-29.  "Whether a proper balance renders nondisclosure erroneous must depend on the

particular circumstances of each case, taking into consideration the crime charged, the possible

defenses, the possible significance of the [privileged information], and other relevant factors."

*Id*. at 629.

In conducting this balancing, the court should consider the defendant's "need [for] the

evidence to conduct his defense and [whether] there are . . . adequate alternative means of getting

at the same point.  The degree of the handicap [to the defendant] must then be weighed by the trial judge against the policies underlying the privilege." *United States v. Harley*, 682 F.2d 1018, 1020 (D.C. Cir. 1982); *United States v. Cintolo*, 818 F.2d 980, 1002 (1st Cir. 1987) (the question is "whether the [defendant] demonstrate[s] an authentic 'necessity,' given the circumstances to overbear the qualified privilege); *United States v. Foster*, 986 F.2d 541, 543 (D.C. Cir. 1993) (balancing the defendant's need for information against importance of government's interest in avoiding disclosure).

In striking this balance, the Court should also keep in mind that the need for disclosure is more limited in the context of a suppression hearing than at trial.  *See McCray v. Illinois*, 386 U.S. 300, 311 (1967); *see also Rigmaiden*, 844 F. Supp. 2d at 990 (applying *McCray* in the context of motion for disclosure of electronic tracking equipment).  Even if the party seeking disclosure successfully rebuts the presumption (by a showing of, among other things, a "compelling need"), the court must still then weigh the public interest in non-disclosure against the need of the litigant for access to the privileged information before ultimately deciding whether disclosure is required.  *In re the City of New York*, 607 F.3d at 948.

As can be explained in more concrete terms in an *ex parte*, *in camera* hearing, the public interest in nondisclosure here significantly outweighs the defendant's need for the information, particularly in light of the defendant's speculative claims regarding the materiality of the requested information.  In particular, the risk of circumvention of an investigative technique if information is released has been recognized as a factor in applying law enforcement privilege to electronic surveillance.  Accordingly, in the event the Court finds the requested information to be material, the Court should hold an *ex parte*, *in camera* hearing to assess the applicability of the privileges and the defendant's need for the materials.

16

Here, the defendant cannot demonstrate any compelling need for the requested information.  As demonstrated above, his requests are entirely speculative and conclusory.  Such requests are insufficient to justify a compelling need, in light of the government's assertion of privilege.  *See United States v. Buras*, 633 F.2d 13566, 1360 (9th Cir. 1980); *Guzman-Padilla*, 573 F.3d at 890.  The defendant cannot compel disclosure based simply on his conjecture that privileged material may contain something relevant.

In addition, the defendant has been provided or has access through discovery to "adequate alternative means of getting at the same point" to which he claims disclosure of the information is relevant.  *Harley*, 682 F.2d at 1020.  The government is willing to provide, as it did in *Michaud*, the computer instructions comprising the NIT that, when executed, produced the NIT results.  Those results have already been disclosed.  This information would allow him to verify that the particular instructions would have produced the particular results and therefore that the NIT was properly described and operated consistent with that description.  He also has a copy of the forensic report of his computer and substantial information pertaining to his dates of access to the pertinent site and the date and time at which the NIT identified his IP address accessing that site.  He may analyze that information if he wishes to verify that the NIT did not interfere with or compromise any data or computer functions.  And, to the extent the defendant wishes to request chain of custody documentation from the government regarding items to be admitted at trial, there are numerous avenues available for him to request such information short of seeking to rummage through the government's files or to compel the government to disclose privileged material.  To date, he has not sought any such information.  Accordingly, the defendant cannot establish the sort of compelling need required to outweigh the significant

public interest in nondisclosure of additional materials pertaining to the use and execution of the

court-authorized NIT.

## <u>CONCLUSION</u>

    For the foregoing reasons, Defendant's motion should be denied.

Respectfully submitted,

CARMEN M. ORTIZ
UNITED STATES ATTORNEY

By: <u>/s/ David G. Tobin</u>
   DAVID G. TOBIN
   Assistant United States Attorney

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ David G. Tobin
DAVID G. TOBIN
Assistant United States Attorney

Date: June 17, 2016